UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRANDON LEE STANLEY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | Cause No. C15-0256RSL<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY AND MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on the United States' "Motion for Summary Judgment" (Dkt. # 77) and "Motion to Exclude Expert Opinions of Elisa Marks" (Dkt. # 79). Plaintiff alleges that defendants failed to provide basic first aid and follow-up care when he broke his hand on April 6, 2013, while in custody. In particular, plaintiff asserts that a seventeen day delay between the x-ray that confirmed the fracture and the corrective surgery, the failure to immobilize the break before surgery, and the failure to provide physical therapy as prescribed following surgery all violated the standard of care and caused permanent injuries. Dkt. # 86 at 2; Dkt. # 89 at 2. Plaintiff offers the testimony of an occupational and certified hand therapist, Elisa Marks, to establish both the applicable standards of care and causation. Defendant seeks to exclude the testimony of Ms. Marks under Federal Rule of Evidence 702 because (1) she is not

ORDER GRANTING IN PART DEFENDANT'S
MOTIONS TO EXCLUDE AND FOR JUDGMENT - 1

qualified to opine on the standard of care for medical providers; (2) her testimony on the standard of care will not assist the trier of fact; (3) she is not qualified to opine that any breach of the standard of care caused plaintiff's alleged injuries; and (4) her testimony regarding causation is unreliable. Without expert testimony to support the claim of medical negligence, defendant argues, plaintiff's claims must be dismissed.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

## BACKGROUND

On Saturday, April 6, 2013, plaintiff fell while in custody at the Federal Detention Center ("FDC") SeaTac. Plaintiff complained of pain in his right hand and requested medical care. The hand was x-rayed on Monday, April 8, 2013, and revealed a fracture of his right thumb. Defendant provided ice and ibuprofen to plaintiff while he waited for surgery, but the hand was not immobilized. Defendant was able to obtain an appointment for plaintiff with an orthopedic surgeon for April 15, 2016, but the U.S. Marshals Service was unable to transport him at the specified time. Plaintiff was ultimately seen by an orthopedic surgeon on April 23, 2013, who diagnosed plaintiff with a Rolando-type fracture of the right thumb and recommended surgical repair. Surgery occurred two days later, on April 25, 2013. On or about June 12, 2013, the orthopedic surgeon removed the pins that had been used to fix the fracture.

On July 2, 2013, a Bureau of Prisons physician removed plaintiff's stiches and put in a request for physical therapy. That request was approved, and plaintiff had five appointments

ORDER GRANTING IN PART DEFENDANT'S
MOTIONS TO EXCLUDE AND FOR JUDGMENT - 2

with an outside physical therapist in September and October 2013 before he was transferred to FDC Sheridan. Although the physical therapist had recommended two therapy sessions a week for four to six weeks, plaintiff's visits were not that frequent and ended when he was transferred. Plaintiff twice requested that his physical therapy be reinstated while at FDC Sheridan, but it never happened. Plaintiff's hand "remains visibly damaged," he has difficulty holding objects, and he is prevented from pursuing a career as a welder. Dkt. # 90 at ¶ 6.

## DISCUSSION

**A. Medical Negligence Under Washington Law**

A medical negligence claim, like other negligence claims, requires a showing of duty, breach, causation, and damages. "[T]o recover damages for medical negligence, the plaintiff must establish that (1) the health care provider breached the accepted standard of care and (2) the breach was a proximate cause of the injury complained of." *Hill v. Sacred Heart Med. Ctr.*, 143 Wn. App. 438, 447 (2008). In order to show that a health care provider failed to follow the accepted standard of care, one must prove that the "provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances." RCW 7.70.040(1)(a). Expert testimony is generally required to establish the standard of care and causation in medical malpractice cases. *Brotherton v. U.S.*, No. 2:17-CV-00098-JLQ, 2018 WL 3747802, at *5 (E.D. Wash. Aug. 7, 2018) (citing *McLaughlin v. Cooke*, 112 Wn.2d 829, 836-37 (1989)).

ORDER GRANTING IN PART DEFENDANT'S
MOTIONS TO EXCLUDE AND FOR JUDGMENT - 3

**B. Qualification as an Expert**

"The admission of expert testimony is governed by Federal Rule of Evidence 702." *F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014). Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion" if the expert's "specialized knowledge will help the trier of fact . . . , the testimony is based on sufficient facts or data, . . . the testimony is the product of reliable principles and methods, and . . . the expert has reliably applied the principles and methods to the facts of the case." Defendant argues that Ms. Marks, an occupational therapist, is not qualified to opine regarding the standard of care that governed the conduct of the physicians, nurse practitioners, and physician assistants who scheduled plaintiff's orthopedic consult and surgery, chose not to immobilize the thumb before surgery, and delayed initiation of physical therapy and/or chose not to reinstate therapy following plaintiff's transfer to FDC Sheridan. Plaintiff does not dispute that Ms. Marks is not a member of the professions whose conduct she purports to judge. He nevertheless argues that her education, training, and experience qualify Ms. Marks to testify that the standard of care for treating a Rolando fracture involves prompt surgical intervention, immobilization prior to surgery, and a certain quantum and schedule for rehabilitative services.

According to her deposition testimony, Ms. Marks generally sees patients only after a hand injury has been diagnosed, managed, and, if appropriate, surgically repaired by health care providers. Her role is to review the referring physician's prescription and to outline a treatment

ORDER GRANTING IN PART DEFENDANT'S
MOTIONS TO EXCLUDE AND FOR JUDGMENT - 4

plan that is designed to improve the patient's functional status as much as possible. If her treatment plan conflicts with the physician's instructions, she notifies the physician and requests an alteration in the prescription. Ms. Marks states that "I like to make sure that I'm on the same page as my referring provider, so that I'm treating – you know, especially in a surgical case, they've been in there, so they know what it looks like, and I want to make sure I'm using their professional expertise to guide my care." Dkt. # 87-1 at 32. Ms. Marks' understanding of the standard of care is based almost exclusively on how the physicians with whom she works handle hand fracture management. Dkt. # 80-14 at 24.

Based on her experiences and plaintiff's medical records, Ms. Marks seeks to testify that:

1. The standard of care for rehabilitation of a Rolando-type metacarpal fracture involves early surgical intervention in order to avoid bony healing and the necessity of additional manipulation during surgery;

2. Plaintiff's reduced thumb function was caused by the delay in obtaining surgery;

3. The standard of care for an unstable fracture such as plaintiff's is to immobilize the injury until surgical care is available;

4. Plaintiff's reduced thumb function was caused by the failure to immobilize the fracture prior to surgery;

5. The standard of care for rehabilitation of plaintiff's type of injury involves early rehabilitation through a skilled physical or occupational therapist;

6. Plaintiff's reduced thumb function was caused by the delay in rehabilitative care and the limited number of visits he received.

ORDER GRANTING IN PART DEFENDANT'S
MOTIONS TO EXCLUDE AND FOR JUDGMENT - 5

The Court agrees with plaintiff that there is no hard and fast rule that only another physician can testify regarding the standard of care or causation in a medical negligence case. Although the Washington Supreme Court had previously specified that the testimony of a "peer" was necessary to establish the standard of care, *see McKee v. Am. Home Prods., Corp.*, 113 Wn.2d 701, 706-07 (1989), it has since recognized that the issue under Rule 702 is whether the witness has "sufficient expertise in the relevant specialty," even if he or she is not part of the specialty, *see Frausto v. Yakima HMA, LLC*, 188 Wn.2d 227, 232 (2017). "[D]epending on the circumstance, a nonphysician might be qualified to testify in a medical malpractice action. . . [T]he line between chemistry, biology, and medicine is too indefinite to admit of a practicable separation of topics and witnesses." *L.M. v. Hamilton*, 193 Wn.2d 113, 135 (2019) (internal citations and quotation marks omitted). In the absence of a *per se* admissibility rule, the Court must determine whether Ms. Marks "is qualified as an expert by knowledge, skill, experience, training, or education" to offer the opinions listed above. FRE 702. *See Hood v. King Cnty.*, No. C15-828RSL, 2017 WL 979024, at *11 (W.D. Wash. Mar. 14, 2017) ("[W]hile 'artificial classification by professional title' does not control 'the threshold question of admissibility of expert medical testimony in a malpractice case,' 'the scope of a witness's knowledge' does." (quoting *Eng v. Klein*, 127 Wn. App. 171, 172 (2005)).

    For the most part, Ms. Marks does not have the qualifications to testify to the opinions offered. Her expertise is in occupational and hand therapy. She is rarely involved in a patient's care before surgery, and her knowledge of and experience regarding the scheduling of surgery

ORDER GRANTING IN PART DEFENDANT'S
MOTIONS TO EXCLUDE AND FOR JUDGMENT - 6

and immobilization options are based on what she is told when a patient is referred to her for rehabilitative therapy. She has no insight into the decision-making process of the health care providers or the standards that guide their choices. Absent expertise regarding the "degree of care, skill, and learning expected of a reasonably prudent health care provider" when diagnosing, managing, and treating a Rolando-type fracture, Ms. Marks will not be permitted to offer opinions on those matters.

The Court finds, however, that Ms. Marks has the expertise necessary to opine regarding the standard of care for the rehabilitation of plaintiff's type of injury, including the timing and extent of the rehabilitative therapy, and whether the deficits plaintiff is experiencing are causally related to the delay in providing therapy and/or its curtailment. This is the witness' bailiwick. Ms. Marks has years of experience dealing with patients who begin therapy post-surgery and can testify regarding the standard practice regarding the initiation of that therapy. Defendant's emphasis on the fact that it is the physician who decides whether physical therapy is warranted misses the point in this case. Plaintiff is not challenging the physician's referral for physical therapy, but rather the delay in initiating the therapy that was prescribed. To the extent plaintiff is challenging the frequency and duration of the therapy appointments once begun, there is evidence in the record that it is the therapist who generally establishes how often to see the patient and over how many weeks. Ms. Marks therefore has the expertise to testify regarding the standard frequency and duration recommendations for a Rolando-type fracture. Finally, with regards to causation, Ms. Marks has experience with what happens when patients miss

ORDER GRANTING IN PART DEFENDANT'S
MOTIONS TO EXCLUDE AND FOR JUDGMENT - 7

appointments, fail to do their recommended exercises, or otherwise curtail the recommended therapy. The Court finds that she has the expertise to opine regarding whether inconsistent therapy appointments and their cessation after five sessions would cause the type of deficits of which plaintiff complains.[1]

## C. Admissibility of Expert Testimony

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the United States Supreme Court charged trial judges with the responsibility of acting as gatekeepers to prevent unreliable expert testimony from reaching the jury. The gatekeeping function applies to all expert testimony, not just testimony based on the hard sciences. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). To be admissible, expert testimony must be both reliable and helpful. The

---

[1] Defendant's objections based on the fact that Ms. Marks is unfamiliar with the provision of healthcare in a prison setting or the standard of care in Washington are unavailing.

> The standard of care in medical malpractice cases is that degree of care expected of the average, competent practitioner in the class to which he belongs, acting in the same or similar circumstances. *Pederson v. Dumouchel*, 72 Wn.2d 73 (1967). Here, the jail physician, a general practitioner, is required to exercise the same standard of care of the average, competent doctor, and this is the class to which he belongs.

*Shea v. City of Spokane*, 17 Wn. App. 236, 246 (1977), *aff'd*, 90 Wn.2d 43 (1978). With regards to Ms. Marks' familiarity with rehabilitative services in Washington, there is evidence in the record that the standards applicable to the practice of occupational therapy are national and that Ms. Marks is familiar with those standards.

> In other words, the standard for [an occupational therapist] doing this work in Washington is not any different than the standard for [an occupational therapist] doing this work in California, Vermont, or anyplace else in the United States. Now, the necessary inference from this is that [she] is familiar with the standard of care in Washington because the standard of care is a national standard of care and [she] is familiar with that standard.

*Elber v. Larson*, 142 Wn. App. 243, 247 (2007).

ORDER GRANTING IN PART DEFENDANT'S
MOTIONS TO EXCLUDE AND FOR JUDGMENT - 8

reliability of expert testimony is judged not on the substance of the opinions offered, but on the methods employed in developing those opinions. *Daubert*, 509 U.S. at 594-95. In general, the expert's opinion must be based on principles, techniques, or theories that are generally accepted in his or her profession and must reflect something more than subjective belief and/or unsupported speculation. *Daubert*, 509 U.S. at 590. The testimony must also be "helpful" in that it must go "beyond the common knowledge of the average layperson" (*U.S. v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002)) and it must have a valid connection between the opinion offered and the issues of the case (*Daubert*, 509 U.S. at 591-92). Plaintiff, as the party offering Ms. Marks as an expert, has the burden of proving both the reliability and helpfulness of her testimony. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

Defendant argues that Ms. Marks' opinions regarding the standard of care for rehabilitative therapy are not relevant because she does not practice in Washington, does not practice in a prison setting, and does not practice in the same field as a physician, nurse practitioner, or physician assistant. These arguments go to her qualifications for offering opinion testimony (discussed above), not to the relevance of that testimony. Ms. Marks' testimony regarding the degree of care, skill, and learning expected of a reasonably prudent health care provider when obtaining rehabilitative services for a patient recovering from a Rolando-type fracture is clearly relevant to plaintiff's negligence claim.

With regards to causation, defendant argues that Ms. Marks' opinions are not reliable because she lacks the medical training or experience to determine whether the symptoms and

ORDER GRANTING IN PART DEFENDANT'S
MOTIONS TO EXCLUDE AND FOR JUDGMENT - 9

deficits of which plaintiff complains "were specifically caused by any perceived failure of the standard of care." Dkt. # 79 at 9. Relying on her training, experience, education, and knowledge, Ms. Marks is of the opinion that if a patient with plaintiff's injury starts physical therapy immediately following cast removal and continues two times per week for six to eight weeks, one would expect the patient to regain functional use of the thumb. Thus, plaintiff's failure to regain the use of his thumb is likely caused by the failure to provide the standard of care for this type of injury. This testimony is not unassailable, but it is within her area of expertise and appears to be based on the types of data and methods she would use to make clinical judgments when treating patients.

**D. Summary Judgment**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of*

*Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

In the absence of evidence regarding the "degree of care, skill, and learning expected of a reasonably prudent health care provider" treating a Rolando-type fracture (RCW 7.70.040(1)(a)), plaintiff cannot succeed on his medical negligence claim related to the timing of surgery or the pre-operative care he received. Defendant is therefore entitled to judgment on those aspects of the claim. There are, however, triable issues of fact regarding whether defendant was negligent in obtaining and providing rehabilitative services and whether that negligence caused plaintiff's injuries.

//

//

ORDER GRANTING IN PART DEFENDANT'S
MOTIONS TO EXCLUDE AND FOR JUDGMENT - 11

1      For all of the foregoing reasons, defendant's motions for summary judgment (Dkt. # 77) and to exclude expert testimony (Dkt. # 79) are GRANTED in part and DENIED in part.

     Dated this 31st day of October, 2022.

*MrS Lasnik*
Robert S. Lasnik
United States District Judge